IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 04-cv-02513-MSK-CBS

DNK, a minor child, by and through his parents, TAREK M. KASSEM and
JENAN M. KASSEM,

        Plaintiff,

v.

DOUGLAS COUNTY SCHOOL DISTRICT,
DOUGLAS COUNTY SCHOOL BOARD,
KATHRYN TRUGLIO,
RICHARD O'CONNELL, and
JIM BRICKEY,

        Defendants.

---

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

---

        THIS MATTER comes before the Court on the Defendants' Motion for Summary

Judgment (**#50**).[1]  Having considered the motion, its supporting brief (**#51**), the response (**#81**),

the reply (**#87**),[2] and the documentary evidence attached thereto,[3] the Court finds and concludes

as follows.

---

        [1] To the extent practicable, the Court refers to each Defendant by name.  Otherwise, the Court
refers to them, collectively, as "the Defendants."

        [2] The Defendants filed an unopposed motion (**#86**) to seal their reply brief and accompanying
exhibits because they contain information regarding juveniles who are not parties to this action.  Pursuant
to the Privacy Policy set forth at Section XI of the Electronic Case Filing Procedures for Civil Cases, the
motion is granted.  However, the Defendants are required to file a redacted copy of their reply and exhibits
within 10 days of this Order for the public record.

        [3] The Plaintiff's unopposed motion (**#94**) to substitute authenticated exhibits is granted.

## I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## II. Issue Presented

The Plaintiff in this action is a minor child who appears through his parents, Tarek and Jenan Kassem.[4] He asserts seven claims for relief.

Claim 1 is a procedural due process claim premised upon an alleged deprivation of a property interest in continued educational benefits. The Plaintiff alleges that Kathryn Truglio, as Principal of Eagle Ridge Elementary School ("Eagle Ridge") in the Douglas County School District, violated the Plaintiff's right to due process by placing him on in-school suspension on July 31, 2002, and by placing him on out-of-school suspension for eleven school days beginning August 1, 2002. He contends that she: (1) failed to inform him of the factual or evidentiary basis of the suspension either before or after suspending him; (2) failed to provide him an opportunity to present his side of the story; and (3) failed to hold a hearing.

Claim 2 is a procedural due process claim premised upon an alleged deprivation of a liberty interest, in specific, the Plaintiff's good name, reputation, honor and integrity. The Plaintiff alleges that Ms. Truglio violated his right to due process when she sent a letter to the families of Eagle Ridge students on August 2, 2002, which characterized the Plaintiff as a bully. He alleges that she: (1) failed to inform him of the factual or evidentiary basis for this characterization; and (2) failed to provide him an opportunity to present his side of the story.

Like Claim 1, Claim 3 is a procedural due process claim premised upon the alleged

---

[4] Because the Plaintiff is a minor child, the Court refers to him as "the Plaintiff" rather than by name.

deprivation of a property interest in continued educational benefits. This claim is asserted against Jim Brickey, the Director of Elementary Education with the Douglas County School District. The Plaintiff alleges that Mr. Brickey violated his right to due process by extending his out-of-school suspension for an additional period of indeterminate length because he: (1) failed to inform the Plaintiff of the factual or evidentiary basis of the suspension either before or after extending it; (2) failed to provide him an opportunity to present his side of the story; and (3) failed to hold a hearing.

Like Claim 2, Claim 4 is a procedural due process claim premised upon the alleged deprivation of a liberty interest. The Plaintiff alleges that Mr. Brickey violated his right to due process by characterizing him as "habitually disruptive" and publishing that characterization to others. He further alleges that Mr. Brickey: (1) failed to inform him of the factual or evidentiary basis for this characterization; (2) failed to give him an opportunity to present his side of the story; and (3) failed to hold a hearing.

Claim 5, like Claims 1 and 3, is a procedural due process claim premised upon an alleged deprivation of a property interest in continued educational benefits. It is asserted against Richard O'Connell, the Superintendent of the Douglas County School District. The Plaintiff alleges that Mr. O'Connell violated his right to due process because he directed that the Plaintiff remain suspended for more than 25 school days in violation of district policy, amounting to expulsion. The Plaintiff also alleges that Mr. O'Connell: (1) failed to inform him of the factual or evidentiary basis for his suspension or expulsion; and (2) failed to provide him an opportunity to present his side of the story.

Claim 6 is pled as a due process claim against the Douglas County School District and is

premised upon alleged deprivations of both property and liberty interests.  The Plaintiff challenges

the School District's "zero tolerance" policy regarding the discipline of students suspected of

bullying other students.  He contends that the School District failed to adequately train employees

to implement this policy in a manner consistent with students' due process rights.  He also alleges

that the School District failed to adequately supervise its employees.

Claim 7 is a procedural due process claim against the Douglas County School District

Board of Education.  It is premised upon alleged deprivations of both property and liberty

interests.  The Plaintiff alleges that the School Board violated his right to due process because it:

(1) reviewed the suspension determinations and affirmed them without giving the Plaintiff an

opportunity to present his side of the story; (2) prevented him from presenting witnesses on his

behalf at a hearing held December 2, 2002; and (3) considered evidence of which he had no

notice, in specific, a letter written by Trina Soria, the parent of another Eagle Ridge student

whom he allegedly bullied.

The issue presented is whether a trial is required on any of these seven claims.

### III.  Material Facts

Based upon the evidence submitted, which the Court construes most favorably to the

Plaintiff, the Court finds for purposes of this motion that:

1.      At all times pertinent to this action, the Plaintiff was a fifth-grade student at Eagle

Ridge, a year-round elementary school.

2.      On July 30, 2002, another student at the school, JH, claimed that the Plaintiff told

him that a third student, DM, had threatened to harm JH.

3.      The Plaintiff never made any threat to harm JH.  Instead, he simply informed JH

4

about the threat made by DM.  According to JH, the Plaintiff is his friend and was warning JH not
to go to the park after school because of DM's threat.

4.      Also on July 30, the school's principal, Kathryn Truglio, spoke with the Plaintiff
and DM.  She told them about the information she obtained that the Plaintiff told JH about a
threat made by DM.  The Plaintiff confirmed that he had heard DM make a threat against JH.  She
then sent both students home and called their families to tell them about the situation and that she
would continue the investigation the next day.

5.      Ms. Truglio learned during her investigation that the Plaintiff told JH that DM was
going to shoot him with a BB gun or hit him with a bat after school.

6.      On July 31, Ms. Truglio again spoke with the Plaintiff and DM and told them that
their actions may have violated the student code of conduct.  She particularly advised them of the
provisions relating to making threats and behavior detrimental to the welfare of a student.  She
also told them about information she received about the threatening statement from another
student, JT.  At that point, the Plaintiff denied telling JH about the threat.  Ms. Truglio asked
them whether there were other students who could provide more information about the incident,
and they provided names to her.  For the rest of that day, the Plaintiff was held in the in-school
suspension room and not allowed to attend class.  Ms. Truglio then continued with her
investigation.[5]

7.      A police officer, Deputy Wagner,[6] came to the school on other business.  Ms.

---

[5] Ms. Truglio did not consider the in-school suspension to amount to formal suspension requiring
due process.  Construing the facts most favorably to the Plaintiff, the Court treats the in-school suspension
as an ordinary suspension.

[6] Deputy Wagner's first name is not in the documentary record.

Truglio asked if she could run something by him, and told him about the incident involving the threat against JH.  Deputy Wagner then told her that this was a police matter and that she should no longer talk with the Plaintiff or DM outside the presence of their parents.  She therefore ceased her investigation.

8.       On the afternoon of July 31, Ms. Truglio contacted the Plaintiff's parents by telephone to tell them about the day's events.

9.       On August 1, Ms. Truglio decided to suspend the Plaintiff for a 4-day period after consulting with Jim Brickey.  The suspension was premised upon the following facts – that the Plaintiff made threats to another student and engaged in behavior that was detrimental to the health and welfare of another student.  Ms. Truglio later extended the 4-day suspension to a total of 10 days.  However, the Plaintiff's out-of-school suspension actually lasted until August 15, for a total of 11 days.  After the suspension, the Plaintiff was "off track," meaning he had three weeks of vacation and was not suspended.

10.      Also on August 1, the Plaintiff and DM were taken into police custody as students were arriving and parents were present.  The Plaintiff was placed in handcuffs and leg restraints and was later charged with menacing.  The Douglas County District Court issued a temporary restraining order on that same date which precluded the Plaintiff from contacting JH "until final disposition or further order of the court."  The restraining order was in effect until October 22.

11.      Also on August 1, Ms. Truglio sent a letter to the parents of all Eagle Ridge students generically describing the circumstances of the arrest and assuring parents that the school is a safe place.  The letter does not identify the Plaintiff or any other student.

12.      Ms. Truglio sent a second letter on August 2 informing all parents that the

6

students involved were suspended.  The letter does not identify any specific student.  That same day, she sent a separate letter to the Plaintiff's parents informing them of the basis of his suspension.

13.     On August 12, Ms. Truglio and Mr. Brickey met with the Plaintiff's parents to review his suspension.  At that meeting, Mr. Brickey offered the Plaintiff's parents the option of tranferring him to another school.  The Plaintiff did not attend this meeting.  The only evidence as to why he did not attend is his mother's deposition testimony that she does not recall why he did not attend.

14.     On August 30, Mr. Brickey sent a letter to the Plaintiff's parents advising that the behavior leading to the Plaintiff's suspension would be counted towards a declaration of him being "habitually disruptive" under School District policies.  The letter also stated that because of the restraining order against the Plaintiff, his reassignment to another school was required in order for him to continue attending public school.  The letter offered a choice of three schools.

15.     The Plaintiff's mother testified in her deposition that she refused to enroll the Plaintiff in any of the three schools because she did not like that the Plaintiff would be closely watched upon reassignment.  His parents tried to enroll him in schools outside the district, without success.  They decided to teach him at home, where he was schooled for a 5-month period.

16.     Subsequently, a separate restraining order was entered against the Plaintiff.  It was in effect from September 2002 until February 2003.  The specific reasons for, and scope of, the restraining order are not obvious from the record, though the general basis for the restraining order was an alleged assault by the Plaintiff of another Eagle Ridge student.  The Plaintiff was

7

charged with third degree assault in a separate juvenile proceeding which commenced on September 10 and was terminated on February 7, 2003.

17.     On September 23, the Plaintiff's parents met with Superintendent Richard O'Connell.  During that meeting they learned that the Plaintiff was accused of assaulting another student.  Mr. O'Connell represented that if the Plaintiff were exonerated of the criminal charges, he would not count the August suspension towards a declaration of the Plaintiff as "habitually disruptive" and would allow the Plaintiff to return to Eagle Ridge.  That same day, Mr. O'Connell rewrote the "habitually disruptive" letter which Mr. Brickey previously sent to the Plaintiff's parents in order to include the definition of "habitually disruptive behavior."

18.     On October 28, the Plaintiff's parents met once more with Mr. O'Connell to discuss the Plaintiff's school placement.  Mr. O'Connell decided that the Plaintiff would return to a school other than Eagle Ridge.  The Plaintiff's parents requested an appeal of that decision.

19.     On November 20, Mr. O'Connell wrote another letter to the Plaintiff's parents.  It stated that the Plaintiff would be transferred to Fox Creek Elementary School unless they selected another school proposed in the September 23 letter.

20.     On November 21, Victoria Simonson, the Assistant Secretary for the School Board, wrote a letter to the Plaintiff's parents informing them that the School Board would consider the Plaintiff's appeal from Mr. O'Connell's decision to transfer the Plaintiff to another school at a meeting on December 3.  The letter provides that the Plaintiff's parents or attorney would be permitted to make a brief statement, but that no evidence would be presented.

21.     On December 3, the School Board held a meeting.  The Plaintiff's parents did not bring him to that meeting because they felt he had endured enough emotional trauma.  The School

Board affirmed Mr. O'Connell's decision.

22.    The School District has a written manual entitled "Student Code of Conduct and Discipline."  It provides that "Conduct . . . which threatens or endangers the health or safety of any person . . . will not be tolerated and will result in disciplinary action."  It also defines "habitually disruptive student" as "a student who has been suspended for reasons stated in Policy JKD/JKE, Student Suspension, Expulsion and Classroom Removal, paragraphs . . . 5 (behavior which is detrimental) . . . three times during the course of a school year or calendar year[.]"  It further provides:

> If the child is suspended for a material and substantial disruption, the student and the parent . . . shall be notified in writing and by telephone or other means at the home or place of employment of the parent . . . of each suspension counted toward declaring the student habitually disruptive pursuant to this policy, as well as of the definition of "habitually disruptive student" and the mandatory expulsion of such students.  A remedial discipline plan may be developed after the first such suspension, and shall be developed after the second such suspension.

> The principal or his/her designee shall prepare a brief written summary of the incident.  The student and his or her parents, guardian, or legal custodian shall be given a copy of the summary and shall be informed that the continuation of such behavior may result in disciplinary action, including suspension or expulsion pursuant to the terms of this regulation.  The student may submit a written response to the incident report within the next five school days which shall be attached to the written summary.  The summary and any written response shall be placed in the student's cumulative file.

23.    Policy JKD/JKE, section 5, is set forth in the manual.  It provides that the following is grounds for discipline: "Behavior, on or off school property which is detrimental to the welfare, health, or safety of . . . other students . . . including, without limitation, behavior

which creates a threat of physical harm to . . . other students[.]"  The manual expressly recognizes

"bullying" as having a negative impact on student health, welfare and safety and states that

discipline for bullying may include suspension, expulsion or classroom removal.

      24.      The manual also sets forth suspension procedures, as follows:[7]

> 1. Whenever a suspension is contemplated, the principal, principal's designee or superintendent shall give the student oral or written notice of the policy or regulation which the student is alleged to have violated, the factual basis for the allegation, and the time and place set for hearing the matter.

> 2. For a suspension of ten days or less, the hearing may be informal and there need be no delay between the time notice is given and the time of the hearing.  An informal hearing does not require that the student be represented by legal counsel, confront and cross-examine witnesses, or call witnesses in support of his or her position.[8]

> 3. Notice and an informal hearing will normally precede the suspension, except when the student's presence constitutes a continuing danger to the student or to other persons or property, or constitutes a continuing threat of disrupting the academic process. If notice and hearing do not precede the suspension, they shall follow as soon thereafter as practicable.

> 4. Once a determination has been made to suspend a student, the student shall be required to leave the school building and school grounds immediately upon arrangements being made for a transfer of custody to a parent, guardian, legal custodian or law enforcement authorities.

> 5. Following a suspension, the principal or designee shall immediately attempt to notify the student's parents, guardian or legal custodian of the action by telephone.  In addition, a written

---

[7] Similar procedures are set forth in an exhibit entitled "Student Suspension, Expulsion, and Classroom Removal."  The differences are not substantive, unless otherwise noted.

[8] The "Student Suspension, Expulsion, and Classroom Removal" document provides that a student who is suspended for 10 days or less shall be given an opportunity to explain his position.

report stating the length of suspension, reasons for the action, and
time and place for the parents, guardian or legal custodian to meet
to review the suspension shall be mailed or delivered to the
student's parents, guardian or legal custodian within three school
days following a suspension or as soon thereafter as practicable.

6.  Any student suspended for more than ten days shall be given the
opportunity to request a review of the suspension before the
superintendent or designee.  The decision of the superintendent or
designee shall be final.

7. A readmittance conference shall be held or scheduled between
the principal or designee and the student's parents, guardian or
legal custodian before the student is readmitted to school after
suspension. . . .

25.    The "Student Suspension, Expulsion, and Classroom Removal" defines

"expulsion" as "the exclusion of a student from attending school and participating in school

activities for a specified period of time beyond that provided for suspension but not to exceed one

calendar year[.]" It also sets forth separate procedures for expulsion.

### IV.  Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if

no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

Summary adjudication is authorized when there is no genuine dispute as to any material fact and a

party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Substantive law

determines what facts are material and what issues must be determined.  It also specifies the

elements that must be proved for a given claim or defense, sets the standard of proof and

identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242,

248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).

A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in

support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is no genuine dispute as to any material fact, no trial is required because the court applies the law to the undisputed facts and enters judgment. If there is a genuine dispute as to material fact, a trial is required.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## V. Analysis

All Defendants contend that the Plaintiff cannot make a *prima facie* showing on any claim. The individual Defendants (Kathryn Truglio, Richard O'Connell and Jim Brickey) also claim

entitlement to qualified immunity.  The Plaintiff responds that he has made a *prima facie* showing as to all claims and that no Defendant is entitled to qualified immunity.

## A.  Claim 1

This is a procedural due process claim[9] asserted against Ms. Truglio premised upon the 1-day in-school suspension and 10-day out-of-school suspension she authorized in July and August 2002.  As to this and all of his other procedural due process claims, the Plaintiff must make a *prima facie* showing that: (1) he was deprived of a liberty or property interest; (2) without adequate process.  *See Boutwell v. Keating*, 399 F.3d 1203, 1211-12 (10th Cir. 2005); *Hulen v. Yates*, 322 F.3d 1229, 1247 (10th Cir. 2003).

Ms. Truglio agrees that the 10-day out-of-school suspension deprived the Plaintiff of a property interest and contends that the Plaintiff cannot produce evidence to show he was denied adequate process prior or subsequent to the deprivation.  She does not address the 1-day in-school suspension.  The Plaintiff contends that he has made a demonstration of a *prima facie* due process violation because the procedures required for suspensions of 10 days or less were not met.  He also contends that his suspension was actually 12 days and required additional process.

The Supreme Court has held that for suspensions of 10 days or less, the Due Process Clause requires that: (1) the student be given either oral or written notice of the charges against him; (2) if he denies the charges, an explanation of the evidence the authorities have to support the charges against him; and (3) an opportunity to present his side of the story.  *See Goss v. Lopez*, 419 U.S. 565, 581 (1975).  The hearing can be informal and follow immediately after the

---

[9] The Court has carefully reviewed the original and amended complaints (**#1, #5**) and discerns that the due process claims are limited to alleged procedural deficiencies.

notice is given.  *See id.* at 582.  It is preferable for the hearing to precede the deprivation, but in

some cases – *i.e.*, when a student's continued presence poses a danger or threat to others – the

hearing may follow as soon as practicable after the deprivation.  *See id.* at 582-83.  There is no

requirement that the student be given an opportunity to retain counsel, to confront or cross-

examine witnesses, or to call his own witnesses.  *See id.* at 583.

The day after she suspended the Plaintiff, Ms. Truglio sent a letter to his parents which

informed them of the factual basis of the suspension – that the Plaintiff made threats to another

person.  There was a meeting between Ms. Truglio, Mr. Brickey and the Plaintiff's parents on

August 12, prior to the expiration of his suspension.  The Plaintiff did not attend this hearing, for

reasons that his mother could not recall. However, there is no evidence that he was told he could

not attend the hearing or that he was excluded from the hearing, where he would have had an

opportunity to present his version of what occurred.  Therefore, to the extent that his suspension

was 10 days or less in length, a reasonable jury could not conclude that the Plaintiff received

inadequate process prior or subsequent to his August 1 suspension.

The Court next turns to the Plaintiff's argument that his suspension lasted 12 days and that

he was provided inadequate process prior or subsequent to such suspension.  Assuming that the

suspension was longer than 10 days, the Plaintiff has identified no additional process which he

contends should have been provided.  Therefore, Ms. Truglio is entitled to judgment on Claim 1.

**B.  Claim 2**

This is a procedural due process claim asserted against Ms. Truglio premised upon the

August 2 letter which Ms. Truglio sent to all parents of children attending Eagle Ridge.  The

Plaintiff contends that the letter impugned his good name and reputation and therefore deprived him of a liberty interest; the Defendants disagree.

Construing the letter in the light most favorable to the Plaintiff, it did not deprive him of a liberty interest.  Absent public dissemination of stigmatizing information, there is no deprivation of a liberty interest in one's good name.  *See Miller v. City of Mission, Kan.*, 705 F.2d 368, 373 (10th Cir. 1983).  The August 2 letter did not identify the Plaintiff and therefore did not impugn him.  *Cf. Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971).  As a consequence, Ms. Truglio is entitled to judgment on Claim 2.[10]

## C.  Claim 3

This is a procedural due process claim asserted against Mr. Brickey.  It is premised upon allegations that Mr. Brickey extended the Plaintiff's initial 10-day suspension for an indeterminate period after August 2002.

There is no evidence that the Plaintiff was suspended from school after serving his out-of-school suspension in August or that Mr. Brickey extended his suspension.  Instead, the evidence shows that the Plaintiff was subject to overlapping restraining orders from August 1, 2002 until February 7, 2003, which prevented him from attending Eagle Ridge and necessitated that he be transferred to another school.  Such transfer would not have been for disciplinary reasons but instead to ensure compliance with the restraining orders.  His parents elected to teach him at home rather than enroll him in another school, even though three other schools were made

---

[10] In his response to the summary judgment motion, the Plaintiff attempts to expand Claim 2.  He contends that Ms. Truglio impugned his name in both the August 1 and 2 letters and by placing his disciplinary record in the file.  This is not the claim before the Court.  However, if it were, the August 1 letter also does not impugn the Plaintiff because he is not mentioned in it.  In addition, the Plaintiff has produced no evidence that his disciplinary record was made public.

available to him.

A transfer to another school does not amount to suspension under Colorado law.  *See Martinez v. School Dist. No. 60*, 852 P.2d 1275, 1279-80 (Colo. App. 1992).  Furthermore, a student has no right to attend the school of his choice if the school cannot meet his special need.  *See* § 22-36-101(3)(b), C.R.S.  The restraining orders against the Plaintiff equated to a special need, because his continued attendance at Eagle Ridge would have interfered with compliance with such orders.  Therefore, his property interest in his continued education did not equate to a property interest in being educated at Eagle Ridge.  Consequently, there is no evidence that Mr. Brickey denied the Plaintiff of his property interest in public education.  Therefore, Mr. Brickey is entitled to judgment on Claim 3.[11]

**D.  Claim 4**

This is a procedural due process claim asserted against Mr. Brickey.  It is premised upon Mr. Brickey's alleged characterization of the Plaintiff as "habitually disruptive" and publishing that characterization to others.

There is no evidence that Mr. Brickey made such characterization.  Rather, the evidence is that Mr. Brickey decided that the July 30 incident would be *counted* towards a "habitually disruptive" determination, but no such determination was ever made.  Therefore, Mr. Brickey is entitled to judgment on Claim 4.

---

[11] In his response to the summary judgment motion, the Plaintiff argues that Mr. Brickey failed to comply with the procedures for transferring students between schools.  Likewise, he transforms Claim 5 against Mr. O'Connell into a similar claim.  These are not the claims asserted in the Second Amended Complaint and there has been no timely motion for further amendment.  Therefore, the Court does not consider this argument.  However, the Court notes that the Plaintiff has identified no clearly established law prohibiting Mr. Brickey's or Mr. O'Connell's conduct with regard to the transfer issue and that they would be entitled to qualified immunity on such a claim.

### E.  Claim 5

Claim 5 is a procedural due process claim asserted against Mr. O'Connell.  It is premised upon allegations that the Plaintiff remained suspended for more than 25 school days, amounting to expulsion.

This claim lacks factual support.  The Plaintiff was subjected to two overlapping restraining orders between August 1, 2002 and February 7, 2003.  He could not return to Eagle Ridge because of the restraining orders but was allowed to attend his choice of three other elementary schools.  Therefore, Mr. O'Connell did not deprive him of his property interest in continued public education.  Mr. O'Connell is entitled to judgment on this claim.[12]

### F.  Claim 6

Although framed as a due process claim, Claim 6 is actually a failure to train or supervise claim.  It is premised upon the School District's alleged failure to properly train or supervise employees as to the implementation of the "zero tolerance" policy regarding bullying.

There can be no municipal liability without a predicate constitutional violation.  *See Trigalet v. City of Tulsa, Oklahoma*, 239 F.3d 1150, 1154 (10th Cir. 2001).  Here, the Plaintiff has made no *prima facie* showing of a predicate constitutional violation.  Therefore, the School District is entitled to judgment on Claim 6.

### G.  Claim 7

---

[12] The Plaintiff repeatedly argues that his transfer out of Eagle Ridge amounted to *de facto* expulsion by Mr. O'Connell.  The problem with this argument is that it seeks to hold Mr. O'Connell accountable for the entry of the restraining orders which necessitated the transfer.  Moreover, the Plaintiff was not precluded from attending other schools within the School District.  It was the Plaintiff's parents who elected to teach him at home rather than enroll him in another public school.

Claim 7 is a procedural due process claim against the School Board premised upon alleged deprivations of both liberty and property interests.  The Plaintiff alleges that the School Board, in considering his appeal from Mr. O'Connell's transfer decision, violated his due process rights because it: (1) did not give him an opportunity to present his side of the story; (2) did not allow him to present witnesses at the December 2 hearing; and (3) considered a letter from Trina Soria.

The Plaintiff has failed to establish a *prima facie* claim against the School Board.  He has pointed to no evidence of a particular liberty or property interest at stake.  As discussed *supra*, he was not expelled from Eagle Ridge, nor was he suspended after August 2002.  In addition, at the December 2 hearing, his parents or his attorney were allowed to make a statement on his behalf.  His parents decided not to bring him to the hearing to avoid emotional trauma.  The Plaintiff has made no demonstration that he was entitled to present witnesses or evidence during the appeal.  He has also produced no evidence that the School Board considered any evidence of which he had no prior noticed in affirming Mr. O'Connell's decision.  Therefore, the School Board is entitled to judgment on this claim.

**IT IS THEREFORE ORDERED** that:

(1)      The Defendants' unopposed motion **(#86)** to seal their reply brief and accompanying exhibits is **GRANTED**.  Within 10 days of this Order, the Defendants shall file a redacted copy of their reply and exhibits for the public record.

(2)      The Plaintiff's unopposed motion **(#94)** to substitute authenticated exhibits is **GRANTED**.

(3)      The Defendants' Motion for Summary Judgment **(#50)** is **GRANTED**.

(4)     The Clerk of Court is directed to close this case.

Dated this 10th day of August, 2006

**BY THE COURT:**

Marcia S. Krieger
United States District Judge